**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN  DIVISION**

| | | |
|---|---|---|
| **MARGO EVANS**, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| v. | ] | **CV-11-BE-2131-S** |
| | ] | |
| **JEFFERSON COUNTY COMMISSION,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

This case is before the court on Defendant Mike Hale's Motion to Dismiss Plaintiff's

Second Amended Complaint and Memorandum of Law in Support Thereof (doc. 39), and

Defendant Arthur Green's and Pat Gamble's Motion to Dismiss Plaintiff's Second Amended

Complaint and Motion to Adopt Defendant's First Motion to Dismiss (doc. 43). The plaintiff

filed a consolidated response opposing Defendant Hale and Defendants Green and Gamble's

motions to dismiss (doc. 47). Defendants Green and Gamble filed a reply (doc. 50), while

Defendant Hale did not file a reply within the time allowed in the briefing schedule.

Plaintiff Margo Evans is the Administrator ad Litem of the estate of Michael Derrick

Evans, deceased. Her lawsuit arises out of Mr. Evan's transfer from federal prison to the

Jefferson County Jail in Bessemer, and his subsequent death while incarcerated at the Bessemer

Jail. Ms. Evans asserts liability against Defendants Sheriff Mike Hale and Jefferson County

District Attorney Arthur Green and Ms. Gamble, among others, for Mr. Evan's death while in the

Bessemer Jail. Sheriff Hale and D.A. Green raise various immunities in defense to Ms. Evans's

claims. Ms. Gamble, in the joint reply brief (doc. 50) filed on her and D.A. Green's second motion to dismiss, submits an affidavit stating that she is a secretary to D.A. Green, and not an assistant district attorney.

The court has reviewed the parties' submissions, and agrees with the defendants that Ms. Evans does not allege facts sufficient to plead a claim or overcome the various immunities asserted. For the reasons stated below, the court finds that both motions to dismiss are due to be granted and all claims dismissed against these defendants.

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

At the motion to dismiss stage, the allegations of the complaint must be taken as true. *Lotierno v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). The court accepts as true the following facts from the second amended complaint, although they may not be the facts proven at trial.

This case originates with Mr. Evans's transfer from the Federal Bureau of Prisons to the Jefferson County Jail in Bessemer. Ms. Evans alleges that the transfer was part of an agreement between the Jefferson County D.A.'s office and the Federal Bureau of Prisons in which D.A. Green proposed to bring Mr. Evans to trial within 180 days. Mr. Evans was transferred to the Jefferson County Jail on October 24, 2008, along with paperwork stating his current health problems as "Chronic Unspecified essential hypertension and Chronic Esophageal reflux." Pl. Sec. Amend. Comp. ¶ 17. The paperwork also stated that "[a]ll medications to be continued until evaluated by a physician unless otherwise indicated" and listed the medications. *Id.* The healthcare provider at the Bessemer Jail, Health Assurance, LLC (another defendant in this case), also described Mr. Evans as having chronic hypertension, and prescribed him daily medication of

Aspirin, Lisinopril, Norvasc, and HCTZ on an undated form.

Mr. Evans was held in custody at the Bessemer Jail until May 16, 2009, when he was found unresponsive in his cell, and later pronounced dead at the West Emergency Room at UAB. Mr. Evans was thirty-seven years old at the time of his death. The complaint does not state the cause of Mr. Evans's death or refer to any examination into the cause of death.

The complaint references numerous grievances Mr. Evans filed while incarcerated at the Bessemer Jail. Some of these grievances related to the length of his confinement, and in some of these grievances he requested to be returned to the Federal Correctional Institute in Texarkana. The complaint also references a variety of other grievances he filed while at the Bessemer Jail, including a grievance that he was forced to attend church during a time reserved for lockdown and rest, a grievance about a horn used at the Bessemer Jail, and a grievance concerning contraband found in his cell of which he claimed to have no knowledge. Although Ms. Evans's second amended complaint implies that Mr. Evans's excessive stay at the Bessemer Jail was a factor in his death, the court notes that the complaint does not reference any formal grievances relating to medical treatment at the jail.

Despite the lack of any alleged formal grievances related to medical care at the Bessemer Jail, the second amended complaint alleges that Mr. Evans "consistently complained of chronic headaches while incarcerated in the county Jail in Bessemer but failed to be treated by a physician or hospital." Pl. Sec. Amend. Compl. ¶ 58. Ms. Evans further alleges that the defendants[1] "knew or should have known that the delay in receiving medical treatment and/or a

---

[1] In the second amended complaint, Ms. Evans did not identify the specific defendants to which these allegations apply.

deprivation of said medical treatment for [Mr. Evans's] hypertension, coupled with [Mr. Evans's] growing frustration over not having his case tried in a timely manner and not being transferred back to the federal penitentiary after his bond was reinstated on November 10, 2008, posed a substantial risk of serious harm to [Mr. Evans]." Pl. Sec. Amend. Compl. ¶ 61.

Ms. Evans alleges that Sheriff Hale and the jail staff knew about Mr. Evans's medical needs, "but nevertheless deviated from the standard of medical care in the community by not properly treating him for his chronic headaches or allowing him to be seen by a physician or hospital." Pl. Sec. Amend. Compl. ¶ 69. According to Ms. Evans's complaint, the Jefferson County Sheriff's Department "had no written policies and procedures in place for operating the county jails in Birmingham or Bessemer, or providing anything other than life or death treatment of inmates when, and only when, it in [sic] the opinion of the nurse on duty, the inmate's condition warranted it." She alleges that Sheriff Hale knew that the Bessemer Jail's system, policies, and procedure were deficient, but did not change them, and that "the utter failure o [sic] the jail's prisoner treatment system led to similar failures in delivery of necessary and appropriate medical care to other inmates as well such as Matthew McWilliams, Richard Phillips, and other numerous other [sic] veterans housed in the county jails." Pl. Sec. Amend. Compl. ¶ 76.

Ms. Evans initially filed her suit in Jefferson County Circuit Court, from which this case was removed. Since then, Ms. Evans has amended her complaint twice. Numerous motions to dismiss, some directed towards Ms. Evans's original and first amended complaint, are currently pending, as are Sheriff Hale's and Mr. Green and Ms. Gamble's motions to dismiss directed against the second amended complaint. In addition to Sheriff Hale, D.A. Green, and Ms. Gamble, the complaint names as defendants the Jefferson County Commission; other individual personnel

of the Jefferson County Jail system; Health Assurance, LLC; Karen Fowler, a Health Services

Administrator for Health Assurance; and numerous fictitious defendants, including ten fictitious

nurses and five fictitious physicians.

Although the court stayed discovery as to all defendants pending its ruling on the motions

to dismiss, the court notes that the Jefferson County Commission has a separate total stay in

effect because of its filing for bankruptcy.

## II.    PLAINTIFF'S COMPLAINT

The plaintiff alleges five counts against numerous defendants. Count I is brought under

42 U.S.C. § 1983 for deliberate indifference to serious medical needs, and is alleged against

Sheriff Hale and other defendants, but not against D.A. Green or Ms. Gamble. Count II is

brought under 42 U.S.C. § 1985 for conspiracy to violate civil rights, and is alleged against

Sheriff Hale, D.A. Green, and Ms. Gamble, among others. Count III is brought under 42 U.S.C. §

1986 for neglect to prevent conspiracy of civil rights, and is alleged against the same defendants

as in Count II. Count IV alleges liability for wrongful death against Ms. Fowler, Health

Assurance, and the fictitious defendants. Finally, Count V is brought under the Alabama Medical

Liability Act, although the complaint does not specify which defendants.

## III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short

and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's

claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

(quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule

8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662,

129 S. Ct. 1937, 1949 (2009).   Pleadings that contain nothing more than "a formulaic recitation

of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that

are based merely upon "labels or conclusions" or "naked assertions" without supporting factual

allegations. *Twombly*, 550 U.S. at 555, 557.

 The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 129 S. Ct. at 1948 (quoting and explaining its decision in *Twombly*, 550 U.S. at

570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'"

the complaint must demonstrate "more than a sheer possibility that a defendant has acted

unlawfully." *Id.*   "Where a complaint pleads facts that are merely consistent with a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.*  (quoting *Twombly*, 550 U.S. at 557).

 The Supreme Court has recently identified "two working principles" for the district court

to use in applying the facial plausibility standard.  The first principle is that, in evaluating

motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations;

however, the court does not have to accept as true legal conclusions even when "couched as []

factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949–50.   The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150.   Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts.  That task  is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.*  If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed.  *Id.*

## IV.   DISCUSSION

### A.   *Defendant Sheriff Hale*

Sheriff Hale moves to dismiss the suit against him in his official capacity based on sovereign immunity and against him in his individual capacity based on qualified immunity. Additionally, Sheriff Hale argues that he has absolute immunity under the Alabama Constitution to claims for money damages asserted under state law. The court agrees with Sheriff Hale, and finds that Ms. Evans has failed to state a claim against him.

### 1.   Absolute Immunity to Money Damages Claims Asserted Under State Law

Ms. Evans alleges only one state law claim for money damages against Sheriff Hale. In Count V, she alleges a violation of the Alabama Medical Liability Act based on negligent care and treatment, and seeks punitive damages.[2] Sheriff Hale argues that the Alabama Constitution, and its subsequent interpretation by the Alabama Supreme Court, precludes this claim.

---

[2] Although Count V does not mention any specific defendants, the court presumes, for purposes of the motion, that Ms. Evans intends to state a claim against Sheriff Hale in that count.

Article I, § 14 of the Alabama Constitution of 1901 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under Alabama Law, "[a] sheriff is an executive officer of the State of Alabama, who is immune from suit under *Article I, § 14, Alabama Constitution of 1901*, in the execution of the duties of his office . . . ." *Parker v. Amerson*, 519 So. 2d 442, 442–43 (Ala. 1987). When the sheriff is "acting within the line and scope of [his] employment," this immunity is absolute, *see ex parte Sumter Cty.*, 953 So. 2d 1235, 1239 (Ala. 2006), except for actions brought for injunctive relief or "to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute." *See Parker*, 519 So. 2d at 445 (listing five exceptions to this absolute immunity for sheriffs).

Sheriff Hale's alleged violation of the Alabama Medical Liability Act would have arisen while he was acting within the line and scope of his employment, and Ms. Evans does not seek injunctive relief in this claim. Ms. Evans, in her response to the motions to dismiss, makes no attempt to dispute Sheriff Hale's immunity under the Alabama Constitution. Accordingly, the court concludes that Sheriff Hale is entitled to absolute immunity for state law claims for money damages, and DISMISSES WITH PREJUDICE Count V against him for violation of the Alabama Medical Liability Act.

**2.     Sovereign Immunity for All Claims Against Sheriff Hale in his Official Capacity**

Ms. Evans, in the style of her complaint, has alleged all her claims against Sheriff Hale in both his official and individual capacity. In accordance with Alabama state law, the Eleventh Circuit has recognized that "Alabama sheriffs are considered arms of the state and protected by sovereign immunity in suits against them in their official capacity." *Marsh v. Butler Cty.*, 268

F.3d 1014, 1028 (11th Cir. 2001); *see also Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir.

2000) ("In their official capacity . . . Alabama Sheriffs operating jails are state officers protected

by Eleventh Amendment immunity."). Ms. Evans again makes no attempt to dispute Sheriff

Hale's argument that he is entitled to sovereign immunity for claims against him in his official

capacity, an argument this court finds to be based in well-settled law. Accordingly, the court

DISMISSES WITH PREJUDICE all claims alleged against Sheriff Hale in his official capacity

in Counts I (deliberate indifference to serious medical needs under § 1983); II (conspiracy to

violate civil rights under § 1985); and III (neglect to prevent conspiracy under § 1986). The

claims alleged in these counts remain against Sheriff Hale in his individual capacity, to which he

has raised qualified immunity. *See Marsh*, 268 F.3d at 1028 ("The Sheriff can be subject to suit

only in [his] individual capacity, to which [he] might be entitled to qualified immunity.").

**3.      Sheriff Hale's Qualified Immunity Defense**

Qualified immunity protects government officials performing discretionary functions

from suit in their individual capacities unless the official violates "clearly established statutory or

constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S.

730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out

their discretionary duties without the fear of personal liability or harassing litigation, protecting

from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee

v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted).

"Because qualified immunity is a defense not only from liability, but also from suit," the court

recognizes the importance of "ascertain[ing] the validity of a qualified immunity defense as early

in the lawsuit as possible." *Id.* (citing *GJR Invs., Inc., v. Cty. of Escambia*, 132 F.3d 1359, 1370

(11th Cir. 1998)).

To receive the protection of qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The Supreme Court has articulated a two-part test to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must ask this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* (citing *Saucier*, 533 U.S. at 201).

Although the Eleventh Circuit once required plaintiffs to meet a heightened pleading standard in § 1983 cases where a defendant raised qualified immunity, the Eleventh Circuit recently held that *Iqbal* obviates the need for a heightened standard. *See Randall v. Scott*, 610 F.3d 701, 708–10 (11th Cir. 2010) ("After *Iqbal* it is clear that there is no 'heightened pleading

10

standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints."). Accordingly, a plaintiff must only meet the single *Iqbal* pleading standard to survive a motion to dismiss.

The court concludes that Sheriff Hale was acting within the scope of his discretionary authority, as Sheriff Hale's alleged actions were undertaken in the performance of his duties as sheriff and were within the scope of his authority. Thus, the court addresses whether Ms. Evans's complaint alleges that Sheriff Hale violated Mr. Evans's constitutional rights.

*Ms. Evans's Deliberate Indifference Claim Under § 1983*

The Eleventh Circuit has long held that "a jail official violates a pre-trial detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." *Lancaster v. Monroe Cty*., 116 F.3d 1419, 1425 (11th Cir. 1997). The case law has also made clear that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster*, 116 F.3d at 1425. Although the treatment of convicted prisoners is governed by the Eighth Amendment, the analysis for deliberate indifference to serious medical needs is the same under either the Eighth or Fourteenth Amendment. *See Bozeman v. Orum*, 422 F.3d 1265, 1272 n. 13 (11th Cir. 2005).

A defendant can be liable for deliberate indifference to serious medical needs either through personal participation or supervisory liability. *See Harper v. Lawrence Cty*., 592 F.3d 1227, 1233 (11th Cir. 2010). Ms. Evans alleges liability under both theories. *See* Pl. Sec. Amend. Compl. ¶¶ 79–82, 87–89.  To succeed on a "personal participation" claim against Sheriff Hale, Ms. Evans first must prove Mr. Evans had an objectively serious medical need, and, second, that

11

Sheriff Hale acted with deliberate indifference to that need. *See Bozeman*, 422 F.3d at 1272. A "serious medical need" is one that is either "diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). To prove "deliberate indifference," Ms. Evans must demonstrate that Sheriff Hale personally: "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper*, 592 F.3d at 1234. She must also show that Sheriff Hale's conduct caused Mr. Evans's death. *Harper*, 592 F.3d at 1234.

In this case, Mr. Evans's paperwork accompanying his transfer to the Bessemer Jail indicated that he had chronic hypertension and listed his medication. This condition and medication were also acknowledged on paperwork produced by the medical care provider at the Bessemer Jail. Thus, construed in the light most favorable to Ms. Evans, Mr. Evans had a serious medical need. Ms. Evans complaint, however, falls short of showing that Sheriff Hale personally participated in any deliberate indifference towards Mr. Evans's serious medical needs.

The complaint, while heavy on conclusory allegations and inflammatory language, is light on factual details that would establish deliberate indifference by Sheriff Hale. Although the court understands that Ms. Evans may not have ready access to all information that would support her claims before discovery commences, the pleading standards nevertheless require her to plead factual allegations that would "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Ms. Evans's complaint only alleges the following facts that *could* support her claim: (1) Mr. Evans was transferred to Bessemer Jail; (2) at the time of transfer, the Bessemer Jail received documentation indicating that Mr. Evans had chronic hypertension and prescribing

12

daily medication; (3) Mr. Evans consistently complained of chronic headaches to unspecified individuals but was never treated by a physician or hospital; and (4) Mr. Evans died while in the Bessemer Jail. The complaint does not specify to whom Mr. Evans complained about chronic headaches, and the vague allegation that Mr. Evans complained about headaches contrasts with the complaints specifically about the numerous formal grievances he filed about other incidents at the jail. The complaint also does not allege Mr. Evans's cause of death, leaving the court with little information from which to determine whether Ms. Evans has met the demanding requirements necessary to establish a deliberate indifference claim.

As an example of the high bar Ms. Evans must meet to prove deliberate indifference, Ms. Evans must show that *individual* defendants have subjective knowledge of a risk of serious harm; "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." *See Harper*, 592 F.3d at 1234. The complaint is devoid of any facts showing that Sheriff Hale had personal knowledge of Mr. Evans's medical condition; the court may not impute knowledge simply because the Bessemer Jail had documentation about Mr. Evans indicating that he had chronic hypertension or because Mr. Evans complained to unknown individuals about headaches. Because Ms. Evans has failed to allege *how* Sheriff Hale personally would have *subjective* knowledge of Mr. Evans's medical condition, the court concludes that Ms. Evans cannot maintain a personal participation claim against Sheriff Hale. *See Harper*, 592 F.3d at 1234–35 ("[T]he Complaint does not allege how the other three Defendants, [the sheriff and administrators], could have had such actual knowledge [about the plaintiff's condition]."). The court notes that even if Ms. Evans had alleged Sheriff Hale had actual knowledge, Ms. Evans

would still have to allege that Sheriff Hale disregarded the risk posed by Mr. Evans's medical condition and that he acted with more than gross negligence. The complaint, however, contains no allegations that Mr. Evans did not receive his medication or even that his death was caused by a callous disregard of his chronic hypertension. In point of fact, the complaint lacks any mention at all of the cause of Mr. Evans's death.

Ms. Evans's complaint also fails to allege a claim against Sheriff Hale for supervisory liability. Pleading such a claim is difficult, because "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d at 1360. To allege supervisory liability, Ms. Evans must allege "a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). She may establish the causal connection "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone*, 326 F.3d at 1360. Alternatively, she may establish the causal connection when "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights," or, "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal quotations marks and citations omitted).

Ms. Evans does not allege a history of widespread abuse

When establishing a causal connection through a history of widespread abuse, the "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."

*Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  The supervisor must have "actual or constructive notice of [the] flagrant, persistent pattern of violations."  *Golbert v. Lee Cty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).  Moreover, the flagrant, persistent pattern of violations must concern the same factually-specific violation about which the plaintiff complains. *See*, *e.g.*, *Golbert*, 510 F.3d at 1332 (finding no widespread policy of denying inmates "lie-in passes" when medically necessary because the plaintiff had not shown that any other inmate had ever been denied a "lie-in pass" when needed for medical reasons); *Crawford*, 906 F.2d at 671–72 (finding no widespread practice of providing inmates with dirty drinking water and forcing them to sleep on the floor, as the plaintiff had alleged, because jail officials were not notified of problems with drinking water and provided all inmates with mattresses).

Ms. Evans attempts to show a history of widespread abuse by alleging that "[t]he utter failure o [*sic*] the jail's prisoner treatment system led to similar failures in delivery of necessary and appropriate medical care to other inmates as well such as Matthew McWilliams, Richard Phillips, and other numerous other [*sic*] veterans housed in the county jail." Pl. Sec. Amend. Compl. ¶ 76. Even assuming that these inmates died from failure to receive medical care, and not other causes, this statement does not sufficiently allege a history of widespread abuse, particularly in light of the "extremely rigorous" standard for establishing supervisory liability. Ms. Evans does not state whether the medical conditions these inmates suffered were similar to those of Mr. Evans; for example, whether these inmates suffered from a catastrophic injury that required immediate medical attention they did not receive, or whether they had a chronic medical condition for which they did not receive appropriate medical care. Nor does Ms. Evans allege that the incidents were not isolated, or that Sheriff Hale had notice of widespread denial of

15

medical care to inmates.

Ms. Evans does not allege a custom or policy resulting in deliberate indifference towards Mr. Evans's constitutional rights

Ms. Evans's attempt at alleging a causal connection through a custom or policy resulting in deliberate indifference to constitutional rights also falls short of establishing supervisory liability. She alleges that the "Jefferson County Sheriff's Department policy and practice was that they had no written policies and procedures in place for operating the county jails in Birmingham or Bessemer, or providing anything other than life or death treatment of inmates when, and only when, it [*sic*] in the opinion of the nurse on duty, the inmate's condition warranted it," Pl. Sec. Amend. Compl. ¶ 72. She also alleges that this "policy and practice was so deficient that the policy and practice itself was a repudiation of Plaintiff's Eighth Amendment and Fourteenth Amendment constitutional rights and was the moving force behind said constitutional violations." Pl. Sec. Amend. Compl. ¶ 73.

The court, however, agrees with Sheriff Hale that even if the alleged policy and practice is assumed to be unconstitutional, Ms. Evans has not alleged any facts that establish a plausible connection between the policy and any deliberate indifference to Mr. Evans's serious medical needs or between the policy and his death. The complaint does not, for example, allege that Mr. Evans did not receive his medication or that his chronic hypertension went untreated. Indeed, as previously noted, the complaint does not even allege Mr. Evans's cause of death. The existence of an unconstitutional policy cannot support liability if the complaint does not plausibly show a casual connection between Sheriff Hale's alleged policy and the alleged constitutional deprivation.

16

<u>Ms. Evans has not alleged facts supporting an inference that Sheriff Hale directed his subordinates to act unlawfully, or that he knew his subordinates would act unlawfully but failed to stop them from doing so</u>

Finally, Ms. Evans has not pled facts supporting even an inference that Sheriff Hale directed his subordinates to act unlawfully, or that he knew his subordinates would act unlawfully and failed to stop them from doing so. Ms. Evans's complaint does not include any facts showing that Sheriff Hale told anyone to do anything, or to refrain from doing anything, regarding Mr. Evans's medical treatment; nor does the complaint include any facts demonstrating that Sheriff Hale knew a subordinate would take some problematic action regarding Mr. Evans's medical care, and that he failed to stop it.

In responding to Sheriff Hale's motion to dismiss, Ms. Evans makes no attempt to refute Sheriff Hale's arguments. Instead, she copies and pastes several pages of excerpts from her complaint and concludes that "[i]t is clear that Plaintiff's allegations clearly describe Sheriff Hale's deliberate indifference to his medical condition, and other conditions existing at the county jail." The court disagrees, finding no "clear" allegations that Sheriff Hale personally participated in denying Mr. Evans medical care and no "clear" allegations establishing a causal connection between Sheriff Hale's actions and the alleged constitutional deprivation. Accordingly, having found the allegations of Ms. Evans's complaint insufficient to plead a deliberate indifference claim against Sheriff Hale, the court concludes that Ms. Evans's § 1983 claim is due to be dismissed against Sheriff Hale.

*Ms. Evans's Conspiracy Claim Under § 1985 and Neglect to Prevent Conspiracy Under § 1986*

Ms. Evans also fails to plead a viable conspiracy claim under § 1985 (Count II) against

17

Sheriff Hale. To allege a conspiracy claim, Ms. Evans must do more than simply aver in her complaint that a conspiracy existed. *See Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). Instead, to support a cause of action under § 1985(3),[3] she must plead facts that establish "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002) (quotation marks omitted). Moreover, Ms. Evans "must show that the defendants were motivated by racial or class-based 'invidiously discriminatory animus.'" *Chen v. Lester*, 364 Fed. Appx. 531, 536 (11th Cir. 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 91 S. Ct. 1790, 1798 (1971)).

Ms. Evans alleges no facts demonstrating such a conspiracy. Not only has she failed to allege a conspiracy, she also failed to respond at all to Sheriff Hale's argument that her § 1985 claim should be dismissed, either in her response to Sheriff Hale's first motion to dismiss or in her response to his second motion to dismiss. The court concludes that her failure to respond to any of these arguments constitutes abandonment of that claim. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."). Accordingly, Ms. Evans's § 1985 claim against Sheriff Hale is due to be dismissed. Because § 1986 claims are derivative of § 1985 violations, the court also concludes that Count III of Ms. Evans's complaint, her § 1986 claim, is due to be dismissed

---

[3] Paragraph (3) of § 1985 is the only paragraph in § 1985 applicable to these facts.

as to Sheriff Hale. *See Park v. City of Atlanta*, 120 F.3d 1157, 1159–60 (11th Cir. 1997).

Having found that Counts I, II, III, and V are due to be dismissed against Sheriff Hale in his official and individual capacity, no claims remain pending against Sheriff Hale.[4] Accordingly, the court concludes that Sheriff Hale is due to be dismissed from the case.

B.      *Defendants Arthur Green and Pat Gamble*

Defendant D.A. Green moves to dismiss claims against him in his individual capacity based on prosecutorial immunity, and claims against him in his official capacity based on sovereign immunity under the Eleventh Amendment. He also argues that Ms. Evans fails to state a claim for conspiracy. Defendants D.A. Green and Pat Gamble point out in their joint reply brief (doc. 50) that Ms. Gamble is not an Assistant District Attorney, but a secretary to D.A. Green. In response, Ms. Evans essentially argues that the D.A. kept Mr. Evans at the Jefferson County Jail longer than he should have, and that such conduct is not a "uniquely prosecutorial function." *See* Pl. Resp. to Def. First Mot. to Dismiss at 12.

From the outset, the court notes that only Counts II (conspiracy under § 1985), III (neglect to prevent conspiracy under § 1986), and V (Alabama Medical Liability Act) of the second amended complaint assert claims against defendants D.A. Green and Ms. Gamble. Regarding Counts II and III, the court finds that, as with Sheriff Hale, Ms. Evans did not plead any facts alleging that the defendants engaged in a conspiracy to deprive Mr. Evans of his civil rights. Among the many flaws in her conspiracy claim, Ms. Evans has failed to allege any actual agreement between two or more persons to deprive Mr. Evans of his civil rights, or even what

---

[4] Count IV of the Seconded Amended Complaint, alleging wrongful death, is brought only against the fictitious nurses and physicians, Health Assurance, and Karen Fowler, Health Assurance's Health Services Administrator.

civil *constitutional* right the defendants allegedly conspired to deprive from Mr. Evans. *See* 42 U.S.C. § 1985(3) (requiring "two more persons in State or Territory" to conspire to deprive a person of his rights); *Cook v. Randolph Cty.*, 573 F.3d 1143, 1157 (11th Cir. 2009) (explaining that § 1985(3) requires proof of a violation of a "serious constitutional right" as well as invidious intent).

Ms. Evans also did not respond to D.A. Green and Ms. Gamble's argument that she had not sufficiently alleged a § 1985 conspiracy claim, despite having two opportunities to file a response brief. Accordingly, the court concludes that Counts II and III are due to be dismissed against defendants D.A. Green and Ms. Gamble for the same reasons as for Sheriff Hale, leaving only Count V, Ms. Evan's Alabama Medical Liability Act claim against these defendants.

The court also concludes that Count V is due to be dismissed against defendants D.A. Green and Ms. Gamble. This Count alleges *negligent care and treatment* of Mr. Evans while at the prison, and, thus, does not implicate acts of D.A. Green or Ms. Gamble. The court will not assume that Count V applies to *all* defendants merely because Ms. Evans failed to allege the claim against specific defendants.

Ms. Evans, in responding to D.A. Green and Ms. Gamble's motion to dismiss, makes no effort to address their specific arguments and salvage her case. She acknowledges that the "thrust of [D.A.] Green and [Ms.] Gamble's Motion to Dismiss Plaintiff's Second Amended Complaint is based upon Eleventh Amendment immunity in their official capacities as prosecutors for the State of Alabama," Pl. Resp. to Def. Sec. Mot. to Dismiss at 8, but fails to respond at all to this argument. Instead, she states that she "sufficiently alleged that the district attorneys [*sic*] office was attempting to coerce a plea out of [Mr. Evans] by keeping him under duress in the county jail

over 120 days rather than dismissing his cases in accordance with the mandatory disposition of detainers contained in the provisions of § 15-9-81 of the Alabama Code." Pl. Resp. to Def. Sec. Mot. to Dismiss at 13.  She also states that she "sufficiently alleged knowledge on the part of [D.A.] Green and [Ms.] Gamble of Plaintiff's decedent's serious medical condition, and their deliberate indifference to said serious medical condition." Pl. Resp. to Def. Sec. Mot. to Dismiss at 13.

Both of Ms. Evans's conclusory statements were raised for the first time in her response brief. Even though the court gave her two opportunities to amend the complaint, she never amended Count I for deliberate medical indifference under § 1983 to include *any* reference to defendants D.A. Green and Ms. Gamble. And though Ms. Evans did cite § 15-9-81 of the Alabama Code in paragraph 44 of the second amended complaint, explaining that Mr. Evans's attorney in his criminal case had filed a motion to dismiss based on the D.A.'s alleged violation of that statute, she did not allege, in any of the counts, how the violation of this statue creates a civil cause of action, much less a deprivation of a serious constitutional right as required under § 1985(3). *See Cook*, 573 F.3d at 1157.

The court undertook a cursory review of the statute and case law interpreting it, and could not find a single case in Alabama where violation of the statute gave rise to a civil cause of action. Section 15-9-81, Alabama's enactment of the Interstate Agreement on Detainers, is a statute dealing with criminal procedure, and the remedy it provides for the D.A.'s failure to timely try a criminal defendant is dismissal of the defendant's case with prejudice. *See* Ala. Code § 15-9-81, Art. IV(e) ("If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment

21

pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."). Based on the provisions of the statute, the court is at a loss to find how the D.A.'s alleged violation of the statute could possibly support any of the civil causes of action alleged in the complaint.

Accordingly, the court finds that Ms. Evans has not sufficiently alleged any claims against D.A. Green and Ms. Gamble, and concludes that they are due to be dismissed from this suit. Because the court finds that Ms. Evans has not pled any cognizable claims against D.A. Green and Ms. Gamble, it need not address the issue of prosecutorial immunity or sovereign immunity under the Eleventh Amendment.

## V.    CONCLUSION

For the reasons stated above, the court GRANTS defendants Sheriff Hale, D.A. Green, and Ms. Gamble's motions to dismiss in their entirety. The court notes that Sheriff Hale, in his motion to dismiss the *original* complaint, raised many of the arguments that this court now agrees with in dismissing Sheriff Hale from this suit. Despite having notice of the deficiencies raised by Sheriff Hale from the moment this case was removed to federal court, Ms. Evans has not used either of the two opportunities the court gave her to amend her complaint to address the issues raised by Sheriff Hale. Similarly, D.A. Green and Ms. Gamble raised most of their legal arguments in favor of dismissal in their motion to dismiss the first amended complaint. Ms. Evans not only failed to address these arguments in her response brief, she also failed to correct the deficiencies they noted in her complaint when filing her *second* amended complaint. Because Ms. Evans has had two opportunities to amend her complaint, and yet has failed to state a viable

claim against these defendants, the court DISMISSES Sheriff Hale, D.A. Green, and Ms. Gamble from this case WITH PREJUDICE.

Other motions to dismiss, beyond those discussed above, are also currently pending against the original complaint and first amended complaint. These include Sheriff Hale's motion to dismiss the original complaint (doc. 2); Sheriff Hale's motion to dismiss the first amended complaint (doc. 9); Jefferson County Commission's motion to dismiss the first amended complaint (doc. 16); and D.A. Green and Ms. Gamble's motion to dismiss the first amended complaint (doc. 17). Because the second amended complaint supercedes all other complaints, the court TERMS these motions to dismiss as MOOT.

The court also *sua sponte* STRIKES the fictitious defendants, listed as "DOES 1 through 50," "NURSE DOES 1 through 10," and "PHYSICIAN DOES 1 through 5" from the complaint because "the Federal Rules do not authorize suit against fictitious parties." *See CSX Transp.*, *Inc. v. United Transp. Union*, 236 Fed. Appx. 562, 563 n. 1 (11th Cir. 2007) (citing *New v. Sports & Recreation*, *Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997)).

Finally, the court addresses the STAY it issued earlier in this case (doc. 27). Sheriff Hale's motion requesting a stay (doc. 24), which this court granted as to all defendants, requested the stay until the pending motions to dismiss had been ruled on. Because this memorandum opinion and order resolve all pending motions to dismiss, the court LIFTS this stay. Discovery may proceed against the defendants remaining in this case except for Defendant Jefferson County Commission, which has a separate stay pending in this case because of its filing for bankruptcy.

The court will simultaneously enter an order to this effect.

DONE and ORDERED this 15th day of May, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE