IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARGO EVANS, | ] |
| Plaintiff, | ] |
| v. | ] 2:11-cv-02131-KOB |
| JEFFERSON COUNTY COMMISSION, et al., | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

This matter is before the court on "Defendant's Motion for Summary Judgment." (Doc. 84). Plaintiff Margo Evans sues as the personal representative of the estate of Michael Derrick Evans, alleging various claims relating to the death of Mr. Evans, who was a pretrial detainee in Jefferson County Jail, Bessemer Division. Plaintiff makes three claims against Defendant Health Assurance LLC: a claim for "Deliberate Indifference to Serious Medical Needs" in violation of 42 U.S.C. § 1983; a claim for wrongful death; and a claim for negligent care and treatment under the Alabama Medical Liability Act ("AMLA"). Health Assurance argues that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law on all three of Plaintiff's counts against it. Plaintiff failed to respond. For the following reasons, the court will GRANT IN ITS ENTIRETY Health Assurance's motion for summary judgment.

I.     PROCEDURAL BACKGROUND

This removed case alleges the following counts: Count I, for deliberate indifference to serious medical needs under 42 U.S.C. § 1983; Count II, for conspiracy to violate civil rights

1

under 42 U.S.C. § 1985; Count III, for neglect to prevent conspiracy to violate civil rights under 42 U.S.C. § 1986; Count VI, for wrongful death, presumably under Alabama state law; and Count V, for negligent care and treatment and punitive damages under the Alabama Medical Liability Act ("AMLA"). Counts I, IV, and V are against the moving Defendants. (Doc. 38).

On November 16, 2011, the court stayed all proceedings involving Defendant Jefferson County Commission *only*, because Jefferson County had filed a petition for bankruptcy under Chapter 9 of the Bankruptcy Code. (Doc. 45).

On May 15, 2012, the court granted the motions to dismiss of Defendants Mike Hale, Pat Gamble, and Arthur Green (doc. 39, 43), and sua sponte struck the fictitious defendants (doc. 54). On June 15, 2012, the court dismissed without prejudice Defendants Allen Farley, Felecia Rucker, Sherry Johnson, Jack Self, Karen Fowler, and Ron Eddings, because of plaintiff's failure to timely serve them under Rule 4(m). (Doc. 65). At this point, no individual defendants remained party to the proceeding. Only Defendants Health Assurance LLC and the Jefferson County Commission remained in the case; however, Jefferson County remained, and still remains, under an indefinite stay because of bankruptcy.

On July 9, 2013, Health Assurance filed the motion for summary judgment that is currently before the court. (Doc. 84). The court entered a briefing schedule that gave Plaintiff until July 31, 2013 to file a response. (Doc. 85). On August 5, 2013, having received no response from Plaintiff, the court ordered Plaintiff to show cause by August 19, 2013, why the court should not grant Health Assurance's motion for summary judgment. (Doc. 86). On August 13, 2013, Plaintiff filed a motion requesting an extension of time to file its response to the order to show cause. (Doc. 87). The court denied this motion because Plaintiff failed to state whether it

was opposed, as required by the Scheduling Order. On August 18, 2013, Plaintiff filed three motions: first, he filed an amended motion for extension of time to respond to the order to show cause (doc. 88); second, he filed a motion to withdraw this amended motion (doc. 89); and third, he filed a "Second Motion for Extension of Time" (although it was actually his third such motion) (doc. 90). On August 20, 2013, the court denied Plaintiff's "Second Motion for Extension of Time" because Plaintiff's counsel failed to show why he could not have responded timely or before leaving town on August 14, 2013 and because Plaintiff failed to offer any defense for his repeated delays. (Doc. 91).

## II.   FACTS

Because Plaintiff has filed no response to Defendant Health Assurance's statement of undisputed facts, the court considers those facts as undisputed for the purposes of this motion, provided that they are supported by evidence in the record. *See* Fed. R. Civ. P. 56(c) and (e). This court's orders refer parties to Appendix II on the court's website, which sets out the requirements for summary judgment briefs and provides: "*All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*" (Emphasis in original). Health Assurance's undisputed facts provide the following information.

On October 24, 2008, Michael Derrick Evans was transferred from a federal facility to the Jefferson County Jail, Bessemer Division. On May 16, 2009, Mr. Evans died in the jail from complications related to chronic hypertension. Jail personnel found Mr. Evans unresponsive in his cell and took him to UAB West, where doctors pronounced him dead. (Doc. 84, ¶ 1, 2, 4).

While incarcerated, Mr. Evans filed a number of grievances against the Bessemer jail;

however, none of these grievances mentioned the nature or quality of Mr. Evans's health care treatment. Furthermore, no record exists of Mr. Evans making any grievance or complaint against Health Assurance or a Health Assurance employee. (Doc. 84, ¶ 3).

The court's Revised Scheduling Order, issued February 21, 2013, required the Plaintiff to make her Rule 26 expert witness disclosures by April 22, 2013. To date, Plaintiff has failed to disclose any expert. (Doc. 84, ¶ 9).

In addition to Health Assurance's statement of undisputed facts, Rule 56(c)(3) allows the court to examine other materials in the record, even if not cited by the parties. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The record includes the affidavit of Dr. Gary Simmons, the Associate Coroner who performed the autopsy on Mr. Evans, which adopts the autopsy report (Exhibit A); the autopsy report of Mr. Evans (Exhibit B); and the affidavit of Karen Fowler, a nurse who was the Health Services Administrator for Health Assurance at the time of Mr. Evans' incarceration (Exhibit C). Plaintiff does not dispute this record or offer any contrasting exhibits; therefore, the court accepts these facts as true as well.

The autopsy report notes that "decedent had a history of high blood pressure and was receiving medication in the jail." (Exhibit B, at 4). The case summary portion of the autopsy report further reflects that "[the] [e]xamination revealed the presence of cardiomegaly with concentric left ventricular hypertrophy. This is consistent with the decedent's known history of hypertension, for which the decedent was on several medications." The report concludes that "decedent died suddenly and unexpectedly. . . . [T]he cause of death is best listed as hypertensive heart disease with the manner of death being natural." (Exhibit B, at 8).

The affidavit of Karen Fowler explains Health Assurance's relationship to Mr. Evans, stating that it "provided inmate medical services at the time of Michael Evans' incarceration at the jail in May of 2009." It also reflects that she has reviewed Plaintiff's complaint and that she is familiar with the applicable standard of care for medical treatment at Jefferson County Jail during the time of Mr. Evans's incarceration. She states:

> Based on my review of Mr. Evans' medical records, the applicable policies and procedures, and my experience as a Health Services Administrator, the medical treatment provided to Mr. Evans met the applicable standard of care and the nurses providing care to Mr. Evans met the standard of care, skill, and diligence required in his treatment and this care was consistent with that of other similarly situated nurses would have provided.

(Exhibit C, at 2).

## III.   STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). Once the moving party "has met its burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

The mere fact that the Plaintiff did not file a response to Defendant's motion for summary

judgment does not mean that the court should automatically grant the motion.[1] The Eleventh Circuit has held: "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no genuine issue of material fact *and* that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

IV.  **DISCUSSION**

For the sake of clarity, the court will deal with the various counts in a different order than that used in Plaintiff's complaint and Health Assurance's Motion for Summary Judgment.

*Count I: Deliberate Indifference to Serious Medical Needs*

Count I of Plaintiff's complaint alleges deliberate indifference to serious medical needs against various defendants, as well as supervisory liability against Health Assurance. Health Assurance argues in its motion for summary judgment that Plaintiff's claim under 42 U.S.C. § 1983 fails as a matter of law because Plaintiff failed to establish that Mr. Evans had a "serious medical need," because Health Assurance was not deliberately indifferent to Mr. Evans' medical

---

[1]In fact, even if Plaintiff had filed a response, it still would have been insufficient because Plaintiff lacked an expert witness, as discussed below.

needs, and because Health Assurance cannot be held liable under respondeat superior for the conduct of Mr. Evans' treating nurses.

In evaluating an alleged § 1983 violation, a court must initially determine "(1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States." *Duke v. Massey*, 87 F.3d 1226, 1231 (11th Cir. 1996). Health Assurance does not argue that it was not acting under the color of state law, and a medical provider, like Health Assurance, who is under contract to provide medical services to inmates acts under color of state law in providing those services. *See West v. Atkins*, 487 U.S. 42 (1988). Furthermore, "[i]t is well established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment." *Brown v. Johnson*, 387 F.3d 11344, 1351 (11th Cir. 2004) (internal quotations omitted).

Not every claim that a prisoner has not received adequate medical treatment states a violation of the Eight Amendment[2]; "[m]edical treatment violates the eight amendment only when it is so grossly excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal quotations and

---

[2]Mr. Evans was technically a pretrial detainee, not a prisoner; therefore Plaintiff's claim is governed by Fourteenth Amendment Due Process Clause, not the Eighth Amendment. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (recognizing the Fourteenth Amendment rights of plaintiff, a pretrial detainee, but applying Eighth Amendment standards) . The standards under the Fourteenth Amendment, however, are identical to the standards under the Eighth Amendment and the court will simply refer to the Eight Amendment standards going forward. *Id*.

citation omitted). To establish deliberate indifference to a serious medical need, a plaintiff must satisfy a two-part inquiry that includes both a subjective and objective component. "First, a plaintiff must set forth evidence of an objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted). The Eleventh Circuit has defined a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

"Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id*. Deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id*. at 1245. An official "may escape liability for known risks if he responded reasonably to the risk, even if the harm ultimately was not averted." *Butler v. Prison Health Services, Inc.*, 294 Fed. App'x 497, 499 (11th Cir. 2008) (internal quotations omitted) (finding that plaintiff with untreated high blood pressure failed to state a claim for deliberate indifference to serious medical needs despite having suffered a stroke as a result of the lack of blood pressure monitoring).

In this case, the only facts in the record that speak to Mr. Evans's medical needs prior to his death are found in the autopsy report. The report states: "The decedent had a history of high blood pressure and was receiving medication in jail." (Exhibit B, at 4); *see also* (Exhibit B, at 8) ("[Autopsy findings are] consistent with the decedent's known history of hypertension, for which the decedent was on several medications."). Even assuming, without finding, that Mr. Evans's hypertension was a serious medical need, the facts do not support a finding of deliberate

indifference. Health Assurance met its burden of highlighting the deficiencies in Plaintiff's case and Plaintiff has failed to establish this essential element of her case for which she has the burden of proof.

The limited evidence indicates that Mr. Evans received treatment for his medical needs in the form of medication in jail. Even if it did not provide the best course of treatment, Health Assurance cannot be held liable under § 1983 for mere negligence. Furthermore, even the fact that Mr. Evans ultimately died from his hypertension, which was a known risk, is not enough to show deliberate indifference because he was receiving treatment for the condition and no evidence indicates that this treatment was unreasonable. Therefore, the court finds that Health Assurance was not deliberately indifferent to Mr. Evans's serious medical needs. As such, the court need not examine Health Assurance's policies and practices, because it has found no underlying liability. Heath Assurance's motion for summary judgment as to Count I is due to be GRANTED.

*Count V: Negligent Care and Treatment under the AMLA*

Health Assurance argues that Plaintiff's AMLA claim fails as a matter of law because Plaintiff cannot proffer any evidence that Health Assurance breached the standard of care. Specifically, it points to the fact that Plaintiff has not produced an expert witness, as required under the AMLA in most circumstances. (Df. Brief, 7-13). *See* Alabama Code §§ 6-5-548(a), -542(5).

The AMLA is a law that governs a wide spectrum of causes of action against health-care

providers, including medical malpractice actions.³ *Collins v. Ashurst*, 821 So. 2d 173, 176 (Ala. 2001). In *Lyons v. Vaughan Regional Medical Center, LLC*, the Alabama Supreme Court addressed whether a trial court properly granted summary judgment for a defendant medical facility in a negligence action under the AMLA. 23 So. 3d 23 (Ala. 2009) (affirming the summary judgment because the plaintiff failed to establish a proximate causal connection between the alleged injury and the treatment received at the medical facility). That court conducted a thorough review of Alabama law on the topic, which is instructive in this matter.

According to the Alabama Supreme Court in *Lyons*, to have a valid claim for negligence under the AMLA, the plaintiffs "must provide evidence indicating that the negligence alleged is the *proximate* and *probable* cause of [the alleged injuries]; a mere possibility or one possibility among others is insufficient to meet the burden of proof." 23 So. 3d at 28-29 (emphasis in original). "[U]nless the cause and effect relationship between the breach of the standard of care and the subsequent complication or injury is so readily understood that a layperson can reliably determine the issue of causation, causation in a medical-malpractice case *must be established through expert testimony*." *Id*. at 28 (emphasis added) (quoting *Sorrell v. King*, 946 So. 2d 854, 862-63 (Ala. 2006)). "When the basis of a summary-judgment motion is a failure of the nonmovant's evidence, the movant's burden . . . is limited to informing the court of the basis of its motion-that is, the moving party must indicate where the nonmoving party's case suffers an evidentiary failure." *Id.* at 27 (quoting *Brown v. St. Vincent's Hosp.*, 899 So. 2d 227, 233 (Ala.

---

³The court assumes without explicitly finding that Health Assurance is a health care provider under the AMLA. Plaintiff implicitly asserts that the AMLA applies to Health Assurance in Count V and Health Assurance does not argue otherwise; therefore, the court will consistently treat all of Plaintiff's claims against Health Assurance as actions against a health care provider.

2004)).

In its statement of undisputed facts, Health Assurance states that Ms. Evans has not disclosed any expert, despite the court's requirement that she make her Rule 26 expert witness disclosure by April 22, 2013. As such, Health Assurance has met its burden as the movant of informing the court of Ms. Evans's evidentiary failure.[4] The court accepts this showing as a prima facie showing of nonliability, and next looks to see whether any evidence exists to rebut this showing. Because this a motion for summary judgment, the court must work through these issues in a somewhat counter-intuitive order; although it has already examined the Defendants' burden as the movant, it now moves back to the beginning and looks at the Plaintiff's burden, starting with establishing a breach of the standard of care.

In *Dews v. Mobile Infirmary Association*, the Alabama Supreme Court addressed another medical malpractice negligence claim, stating that "the sole issue presented for our review is whether the plaintiff presented substantial evidence" under § 6-5-548 of the AMLA. 659 So. 2d 61, 63 (Ala. 1995). The Court in *Dews* noted that "when the defendant in a medical malpractice case moves for a summary judgment and makes the requisite prima facie showing of nonliability," to avoid entry of summary judgment for the defendant, the plaintiff "must present substantial evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury." *Id.* at 64. The Court reviewed the relevant portions of the AMLA before affirming the trial court's grant of summary judgment to the defendant in the case.

---

[4] Health Assurance also submits the affidavit of Karen Fowler, Heath Services Administrator, stating that "the medical treatment provided to Mr. Evans met the applicable standard of care . . . ." (Exhibit C, at 2). Although the court accepts this as evidence that the other *nurses* met their standard of care, Ms. Fowler is not qualified to testify as to whether the *doctors* met the standard of care. *See* Alabama Code § 6-5-548(b).

*Id.* at 63.

> Under the AMLA:
>
> In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, the *plaintiff* shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

Alabama Code § 6-5-548(a) (emphasis added). Section 6-5-542(5) defines "substantial evidence" as "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."

In *Anderson v. Alabama Reference Laboratories*, the Alabama Supreme Court found that "[a]s a general rule, in a medical-malpractice action, the plaintiff is *required to produce expert medical testimony* to establish the applicable standard of care and a breach of that standard of care, in order to satisfy the plaintiff's burden of proof." 778 So. 2d 806, 811 (Ala. 2000) (emphasis added). The Court explained that "an exception to this rule exists in a case where want of skill or lack of care is so apparent as to be understood by a layman, and requires only common knowledge and experience to understand it." *Id*. (internal quotations omitted). The Court went on to list four specific examples of such situations:

> 1. where a foreign instrumentality is found in the plaintiff's body following surgery; 2. where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3. where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4. where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.

*Id*. The Alabama Supreme Court recently reaffirmed the existence of these exceptions, but noted its previous holding that the *Anderson* list is *not* exhaustive and courts should use the general

12

"common knowledge and experience" standard in evaluating plaintiffs' allegations. *Morgan v. Publix Super Markets, Inc.*, No. 1120522, 2013 WL 4294149, at *4 (Ala. August 16, 2013) (citing *Ex parte HealthSouth Corp.*, 851 So. 2d 33, 37 (Ala. 2002)).

In this case, the court finds that Ms. Evans could not establish the applicable standard of care through common knowledge and experience, even if she had made such an argument. The autopsy revealed no foreign object in Mr. Evans's body; this situation is not one where Mr. Evans received an injury through treatment of another ailment; Ms. Evans offers no authoritative text or treatise on the matter; and Ms. Evans does not claim to be a medical professional. Furthermore, even accepting the allegations in the complaint that Mr. Evans "consistently complained of chronic headaches while incarcerated in the county jail in Bessemer but failed to be treated by a physician or hospital," (doc. 38, ¶ 58), and that Mr. Evans failed to receive other treatment as well, the court finds that a layperson would be unable to use common knowledge or experience to determine whether this delay or other delays in treatment breached the applicable standard of care. As such, Ms. Evans is required to produce medical expert testimony to overcome the Health Assurance's prima facie showing of nonliability at the summary judgment stage of proceedings.

Because she has failed to produce such evidence, the court finds that Health Assurance's motion for summary judgment is due to be GRANTED as to Count V for negligent care and treatment under the AMLA.

*Count IV: Wrongful Death*

Health Assurance also argues that Plaintiff's wrongful death claim fails as a matter of law for two reasons. First, it argues that with the dismissal of Health Assurance employee Karen

Fowler, the court extinguished any underlying liability against a Health Assurance employee, therefore precluding a vicarious liability claim. Second, it argues that the affidavit of Karen Fowler serves as a prima facie showing that Health Assurance did not breach the standard of care and that Plaintiff fails to present any evidence to the contrary. The court chooses to address this second argument.

Plaintiff's complaint puts forth a claim for wrongful death, but does not reference any statutory provision under which this claim falls. (Complaint, ¶¶ 105-07). Alabama recognizes but one cause of action for wrongful death, which is found in Alabama Code § 6-5-410. *Alabama Power Co. v. White*, 377 So. 2d 930, 933 (Ala. 1979). Under § 6-5-410:

> A personal representative may commence an action and recover such damages as the jury may assess . . . for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

Plaintiff specifically alleges that "Defendants negligently and/or wantonly violated [the required] standard of care or caused it to be violated with the foreseeable result that Plaintiff's decedent suffered unnecessary pain and suffering, and ultimately died;" therefore Count IV is a negligence claim under § 6-5-410. (Complaint, ¶ 106).

Although neither party suggests that the court should address this claim under the AMLA rubric previously discussed in Count V, the court finds that the AMLA does indeed apply to this claim. Alabama Code § 6-5-548(a), the section of the AMLA that sets the burden of proof, states: "In any action for injury or damages or **wrongful death**, whether in contract or in tort, against a health care provider for breach of the standard of care, the plaintiff shall have the burden of

proving by substantial evidence that the health care provider failed to exercise such reasonable care . . ." (Emphasis added) (see supra for full text of statute). By its terms, this statute applies to wrongful death claims such as the claim made by Plaintiff against Health Assurance, given Health Assurance's status as a health care provider.

Furthermore, Alabama courts have consistently applied AMLA provisions to wrongful-death actions except where § 6-5-410 specifically provides otherwise. *See McGlothren v. Eastern Shore Family Practice, P.C.*, 742 So. 2d 173 (Ala. 1999) (applying §§ 6-5-548 and -549 of the AMLA to a medical-malpractice wrongful-death action and upholding the trial judge's ruling that "expert testimony was required as a matter of law" to prove the case); *see also Hall v. Chi*, 782 So. 2d 218, 221 (Ala. 2000) (finding that the AMLA statute of limitations did not apply to wrongful-death actions because § 6-5-410 includes its own statute of limitations, but implying that other AMLA provisions apply); *Campbell v. Williams*, 638 So. 2d 804, 817 (Ala. 1994) (finding in a wrongful-death case under § 6-5-410 that the AMLA "applies to all causes of action against health care providers that accrue after June 11, 1987" and ruling that any error that the trial court committed in applying § 6-5-542 of the AMLA to an earlier action was harmless).

As required by Alabama law, the court will treat Plaintiff's wrongful-death claim as an AMLA negligence action. As such, the court's previous analysis from Count V applies to Count IV as well. The court will not repeat what it has already stated, but finds that Health Assurance has met its burden as the movant of pointing out Plaintiff's failure to produce an expert witness and, to some extent, of proffering Karen Fowler's affidavit (*see* footnote 2, *infra*), which establish a prima facie showing of nonliability on this wrongful-death claim. The court further finds that Plaintiff has failed to provide any expert testimony—or any other kind of "substantial

evidence" required by § 6-5-548—to rebut this showing. Therefore, the court finds that Health Assurance's motion for summary judgment is due to be GRANTED as to Count IV for wrongful-death.

## V.     CONCLUSION

For the reasons discussed above, the court will GRANT Health Assurance's motion for summary judgment in its entirety and DISMISS WITH PREJUDICE all of Plaintiff's claims against Health Assurance. The court also notes that Counts II and III of Plaintiff's complaint contain claims against individual defendants only. Because all of the individual defendants were dismissed from this case as of June 15, 2012 (doc. 65), the court will DISMISS WITH PREJUDICE Counts II and III. The only claims remaining in this case are Counts I, IV and V against Defendant Jefferson County Commission, only, which remain pending but stayed because of bankruptcy. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 1st day of November, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE